Cynthia TAYLOR, Appellant,

v.

COMMUNITY HOSPITALS OF INDIANA, INC., d/b/a Community Hospital North, Appellee.

No. 49A04–1008–PL–499.

Court of Appeals of Indiana.

March 28, 2011.

Publication Ordered May 10, 2011.

James E. Zoccola, Kevin A. Morrissey, Lewis & Kappes, P.C., Indianapolis, IN, Attorneys for Appellant.

Robert G. Zeigler, T. Graham Dycus, Zeigler Cohen & Koch, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Cynthia Taylor appeals the trial court's entry of summary judgment in favor of Community Hospitals of Indiana, Inc., d/b/a Community Hospital North (the "Hospital").

We affirm.

### ISSUE

Whether the trial court erred in granting summary judgment to the Hospital.

### FACTS

On March 29, 2009, Taylor was visiting her husband, who was a patient at the Hospital. Taylor had been at the hospital most of the day, during which the weather consisted of rain and sleet.

In the early evening, Taylor went to the Hospital's cafeteria, located on the ground floor. She purchased several items, including a container of soup, and began carrying the items back to her Husband's room. As she approached the main lobby's bank of elevators, she slipped and fell. As she fell, the right side of Taylor's face and her right shoulder struck the frame of one of the elevators.

No one witnessed Taylor's fall. Justin Price, a Marion County Special Deputy employed by the Hospital as a security guard, responded to the scene of the accident. When he arrived, he found Taylor lying on her back. Approximately ten to twenty minutes after the fall, emergency personnel transported Taylor to the Hospital's emergency room, where she was

treated for her injuries. Taylor suffered a chipped bone in her shoulder and a fractured cheekbone. The injury to Taylor's shoulder required physical therapy, and she sustained some nerve damage to her face.

■ On July 2, 2009, Taylor filed a complaint for damages against the Hospital. In her complaint, Taylor alleged that "[w]hile approaching the elevator, [she] encountered a wet surface adjacent to the elevator...." (App. Tab 5, Compl. at 2).[1] She therefore claimed the Hospital negligently maintained its walkways and public areas.

On or about May 14, 2010, the Hospital filed a motion for summary judgment and memorandum in support thereof. The Hospital argued that it was entitled to summary judgment as a matter of law because "a trier of fact cannot find negligence ... except by engaging in prohibited inferential speculation...." (App. Tab 3).

The Hospital designated as evidence Taylor's deposition, which was taken on March 23, 2010; Taylor's answers to the Hospital's interrogatories; Price's affidavit; and the incident report prepared by Price on March 29, 2009. In her interrogatories, Taylor stated that "she slipped and fell on a wet floor...." (App. Tab 5, Interrog. No. 8). She reiterated this assertion during her deposition, stating that she "clearly slipped in something, otherwise, [she] wouldn't have hit the elevator." (App. Tab 5, Dep. at 30). She, however, admitted that she did not know "for a fact" that there was something on the floor but assumed that "[t]here had to be something there" because she "was walking and then

[she] was on the floor." *Id.* at 50. She also stated that when Price asked her whether she had slipped on something, she replied that she "didn't know." *Id.* Taylor further testified that although she "did not see anything on the floor," *id.*, prior to her fall, she "had to slide in something in order to make [her] fall." *Id.* at 57.

In his affidavit, Price averred that he was summoned to the lobby to assist Taylor. When he arrived at the scene of the accident, he found Taylor "lying on her back in front of a bank of elevators." (App. Tab 5, Aff. at 1). He further averred that "[o]ther than Ms. Taylor's spilled food," the floor "was dry"; Taylor informed him that "[a]s she came close to the elevator with her food in her hands, her feet shuffled, she lost her balance, and tripped herself"; when he asked Taylor whether she had "tripped on anything," she replied "No.'" *Id.* at 2. According to the incident report prepared by Price shortly after the accident, Taylor told him that her "feet shuffled," causing her to lose her balance; she denied tripping on anything; and an inspection of the area where Taylor fell revealed that the floor was dry. *Id.* at 4.

On July 20, 2010, the trial court held a hearing on the Hospital's motion for summary judgment. Finding no genuine issues of material fact, the trial court granted the Hospital's motion.

### DECISION

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine

---

1. We remind Taylor's counsel that pursuant to Indiana Appellate Rule 51(C), "[a]ll pages of the Appendix shall be numbered at the bottom consecutively[.]" Although the appendix is organized with tabs, the pages must still be numbered consecutively. We also note that the appendix does not contain the chronological case summary despite it being listed in the table of contents.

issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury,* 671 N.E.2d 113, 116 (Ind.1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 169 (Ind.1996). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 318 (Ind.Ct.App.1991).

All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996). However, once the movant has carried his initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.,* 612 N.E.2d 135, 138 (Ind. Ct.App.1993), *trans. denied.* If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id.*

In negligence cases, summary judgment is rarely appropriate because such cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence. Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim.

*Harradon v. Schlamadinger,* 913 N.E.2d 297, 300 (Ind.Ct.App.2009) (internal citations omitted), *trans. denied.*

An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the defendants' conduct. The "but for" analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.

*Daub v. Daub,* 629 N.E.2d 873, 877 (Ind. Ct.App.1994) (internal citations omitted).

 Thus, to recover on a theory of negligence, a plaintiff must establish three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury to the plaintiff proximately caused by that breach. *See Harradon,* 913 N.E.2d at 300. This court has long held that "negligence cannot be inferred from the mere fact of an accident, absent special circumstances." *See, e.g., Hale v. Community Hosp. of Indianapolis, Inc.,* 567 N.E.2d 842, 843 (Ind.Ct.App. 1991). Moreover, "negligence cannot be established through inferential speculation alone." *Id.* "The mere allegation of a fall is insufficient to establish negligence, and negligence cannot be inferred from the mere fact of a fall." *Hall v. Eastland Mall,* 769 N.E.2d 198, 206 (Ind.Ct.App. 2002).

Hence, in order for the plaintiff to carry her burden of proof, she must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of her injury. The plaintiff's burden may not

be carried with evidence based merely upon supposition or speculation. Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Civil liability may not be predicated purely upon speculation.

*Daub*, 629 N.E.2d at 877 (internal citations omitted).

This case is analogous to *Hale*. In that case, Anita Hale initiated an action against Community Hospital of Indianapolis, Inc. ("Community") after she fell at a crosswalk near Community's entrance. Subsequently,

> Anita gave deposition testimony in which she repeatedly stated that as she stepped from the curb she felt as though she stepped into a hole. Additionally, Anita stated that it was dark, that she did not see a hole, and that she did not remember seeing any defect before she stepped from the curb. When questioned about the feeling that she had stepped into a hole Anita responded, "It just felt like I was sinking, even though I wasn't basically in a hole." On the day of the deposition, October 14, 1988, Anita returned to the crosswalk to view the area of the fall. Anita observed "bad places" in the curb. She did not know whether the rough areas were present at the time of her fall ..., and she did not know if they caused her fall.

*Hale*, 567 N.E.2d at 843.

Designating Hale's deposition as evidence, Community moved for summary judgment, which the trial court granted. Hale appealed, asserting that "the trial court erred in granting summary judgment for Community by failing to draw inferences from [her] deposition testimony." *Id.* Finding "no evidence of negligence has been established or placed at

issue," this court held that the trial court properly entered summary judgment. *Id.*

Similarly, in *Scott County Family YMCA, Inc. v. Hobbs*, 817 N.E.2d 603 (Ind. Ct.App.2004), this court examined whether the evidence designated by the YMCA in support of its motion for summary judgment was sufficient to meet the initial burden of showing that there was no genuine issue of material fact "that would allow a trier of fact to find anything more than a mere accident'...." 817 N.E.2d at 605. Specifically, in that case,

> Hobbs fell near a shower stall that was adjacent to the YMCA's men's locker room. He subsequently filed a complaint in which he alleged that the YMCA "failed to properly maintain the surface condition of the floor, or to warn users of its dangerous condition." Hobbs further alleged that the YMCA's "failure to maintain the floor resulted in a slippery surface causing [Hobbs] to fall and become injured."

*Id.* at 604 (internal citations omitted).

The YMCA filed a motion for summary judgment, designating as evidence the affidavit of YMCA employee Lisa Green and Hobbs' deposition.

> Green averred that she was alerted that Hobbs had fallen, she went to the locker room to check on him, and she examined the floor area where he fell. Green stated that "[t]he floor surface was flat and dry and contained no moisture, debris, foreign substances, puddles or standing water." She further stated that "[t]he floor surface did not have any visible physical defects."
>
> ... In [Hobbs'] deposition, Hobbs stated that he did not see any water or any type of foreign substance on the floor. He also stated that he did not observe any defects in the floor. He further stated that "[I] just felt like I hit some-

thing wet and it just, it just slipped … like you slip on ice or something."

*Id.* (internal citations omitted). In response, Hobbs designated evidence that there had been stains on the floor, which had been sanded and patched several months prior to his fall. The trial court denied the YMCA's motion for summary judgment.

Construing all of the evidence in favor of Hobbs, this court found that he had failed to come forward with sufficient evidence demonstrating the existence of genuine factual issues to be resolved at trial. Specifically, this court determined that "a finding of negligence could only occur if the jury 'jumped the gap from reason to speculation.'" *Id.* at 606 (quoting *Wright Corp. v. Quack*, 526 N.E.2d 216, 219 (Ind. Ct.App.1988)).

■ Likewise, a review of the designated evidence in this case shows that Taylor's claim of negligence is based upon speculation and conjecture. She infers that something was on the Hospital's floor because she fell. She, however, admits that she neither saw nor felt anything on the floor prior to or in the moments after her fall.[2]

The Hospital's designated evidence established a lack of genuine issues of material fact that would allow a trier of fact to find that the Hospital caused Taylor's fall. Taylor could not then rely on conjecture that the floor was wet or slippery to demonstrate the existence of genuine factual issues to be resolved at trial. *See Midwest Commerce Banking Co. v. Livings*, 608 N.E.2d 1010, 1013 (Ind.Ct.App.1993) ("[C]ausation may not be inferred merely from the existence of an allegedly negligent condition."). Accordingly, we affirm the trial court's granting of summary judgment in favor of the Hospital.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

### ORDER

Appellee, by counsel, has filed a Motion to Publish Memorandum Decision.

Having considered the matter, the court FINDS AND ORDERS AS FOLLOWS:

1. Appellee's Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion handed down on March 28, 2011, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

NAJAM, DARDEN, BAILEY, JJ., concur.

---

**2.** We note that in her deposition, Taylor testified that after she received treatment for her injuries, she observed "wet footprints on the floor of the elevator." (App. Tab 5, Dep. at 34). By her own admission, however, she noticed these footprints at least one hour after her fall; and the footprints were on the floor of the elevator, whereas she had fallen outside the elevator.