## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2015, 8:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Jason A. Scheele
Andrew L. Palmison
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Dean J. Arnold
Ken Nunn Law Office
Bloomington, Indiana

Bryan H. Babb
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

OmniSource Corporation,

*Appellant-Defendant,*

v.

Linda K. Fuller and Greg Fuller,

*Appellees-Plaintiffs.*

December 29, 2015

Court of Appeals Case No.
27A02-1407-CT-476

Appeal from the Grant Circuit Court

Trial Court Cause No.
27C01-1203-CT-220

The Honorable Mark E. Spitzer, Judge

**Pyle, Judge.**

[1] OmniSource Corporation ("OmniSource") appeals the denial of its motion for judgment on the evidence during the trial of Linda and Greg Fuller's (collectively "the Fullers") negligence claim. On appeal, OmniSource argues

that the Fullers' evidence supporting their claim was speculative and therefore insufficient to survive its motion for judgment on the evidence. Finding that the evidence was reasonably open to more than one interpretation, we conclude that the trial court did not err in denying the motion and sending the case to the jury.

[2] We affirm.

# Issue

Whether the trial court erred in denying OmniSource's motion for judgment on the evidence.

# Facts

[3] OmniSource is a processor of scrap and secondary metals and operates a metal scrapyard in Grant County, Indiana. Kenny Merritt ("Merritt") is an OmniSource employee and works as a certified crane operator. Merritt was operating a crane at the scrapyard on March 29, 2011, and the Fullers brought metal to OmniSource that day, as they regularly gather scrap metal as a means of supporting themselves.

[4] The Fullers parked their truck in the area of Merritt's crane and began unloading their materials. Greg was in the bed of the truck passing materials to Linda, who then placed them in a pile behind the truck. Meanwhile, Merritt had finished unloading materials for another customer. When he swung the boom of his crane around, he saw the Fullers and the pile of materials they had unloaded from their truck.

Merritt began moving items from the Fullers' pile. Merritt picked up a bumper with the boom and began dragging it away from the pile. While Merritt was moving the bumper, it came into contact with Linda, and she fell to the ground. Greg yelled to Merritt that he had hit Linda, and Merritt exited the cab of the crane to check on her. Linda stated that her knee hurt but that she felt okay. Merritt asked her if she needed an ambulance, and she said no.

The next day, the pain in Linda's knee worsened, and she and Greg went to the emergency room. Linda eventually sought treatment from Dr. Salil Rajmaira ("Dr. Rajmaira"), and he diagnosed her with a meniscus tear in her right knee. While tests revealed pre-existing degenerative changes in the knee, Dr. Rajmaira found that the tear was consistent with trauma to the knee.

On March 30, 2012, the Fullers, by counsel, filed a complaint alleging that Linda had suffered injury and that Greg had suffered loss of services, companionship, society, and consortium due to OmniSource's negligence. The case was tried to a jury on June 9 and 10, 2014.

At trial, Merritt acknowledged that the Fullers were within ten feet of the boom of his crane and that part of the load he was moving came into contact with Linda. He also said that he should have had the Fullers move out of the area where the boom of his crane was operating. Mike McIntire ("McIntire"), the OmniSource plant manager, acknowledged during a deposition that if a customer were within twenty-five feet of the crane, the operator should set the magnet on the boom down "and motion for the person to remove themselves

from that area." (Tr. 106). Linda testified that there was a loud noise, the truck moved, and she fell to the ground. While she stated that she did not know what had happened, Greg testified that he saw the metal on the crane's boom hit Linda's arm, causing her to fall to the ground.

[9] At the close of the Fullers' case-in-chief, OmniSource moved for judgment on the evidence, arguing that the Fullers had not established what had caused Linda to fall and suffer an injury. After hearing arguments and considering cases cited by the parties, the trial court ruled on the motion as follows:

> We have the testimony of Mr. Merritt[,] who indicated that he did, in some form or fashion, come [into] contact with the Plaintiff. Now, he testified he didn't see the Plaintiff fall[.] [H]owever, the Plaintiffs testified that . . . Mrs. Fuller did fall as a result of some contact that occurred. Certainly, there's going to be a need for the jury to reconcile the testimony of the[]different witnesses. Somebody [has] either perceived something . . . differently or frankly somebody's not telling the truth. However, given the evidence, the jury could conclude that there was a contact with Mrs. Fuller from the testimony of Mr. Merritt. [The jury] [c]ould conclude from the testimony of the Fullers that that contact caused Mrs. Fuller to fall. [The jury] [c]ould conclude from the testimony of Mrs. Fuller that that fall resulted in the injury to the[]knee [and resulted] in damages and so, using the standard that the Court is required to apply, which is[]there [being] some evidence[]where the jury could draw a conclusion that there was negligence here. Looking at the elements of the case, looking at the evidence here, notwithstanding the fact that it could certainly be and probably will be argued a different way by counsel and could ultimately, a different decision could be made by the jury. The question is whether they could draw those inferences in favor of Mrs. Fuller and Mr. Fuller and find that the Defendant was negligent and there were damages resulting from

that negligence[.] The Court is finding that that could happen no matter how, sort of, no matter how we might argue as to whether the jury would have to sort of selectively stretch things from one testimony to the other in order to reach that conclusion. There certainly is evidence in the record which if the proper inferences are drawn could result in a finding of negligence. Not saying that it necessarily will [will happen], but could they do it, they certainly could. So Court finds this is a case that should go to the jury and so denies the motion for judgment on the evidence.

(Tr. 237-238). OmniSource presented no other evidence, and the jury found in favor of Linda for her negligence claim, assigning eighty percent (80%) fault to OmniSource and twenty percent (20%) fault to the Fullers. The jury found in favor of OmniSource for Greg's claims. OmniSource now appeals.

# Decision

[10] OmniSource appeals the denial of its motion for judgment on the evidence during the trial of the Fullers' complaint.

[11] On appeal, we apply the following standard of review to a trial court's ruling on a motion for judgment on the evidence:

> It is axiomatic that in reviewing the trial court's ruling on a motion for judgment of the evidence[,] *the reviewing court must consider only the evidence and reasonable inferences most favorable to the nonmoving party*. Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of [the] defendant. If there is any probative evidence or reasonable inference to be drawn from the

> evidence or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper.

*Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1051 (Ind. 2003)

(emphasis in original) (internal citations omitted).

[12] OmniSource argues that its motion for judgment on the evidence should have been granted because there was no proof that any act or omission on its part caused Linda to fall. A negligent act is said to be the proximate cause of an injury "if the injury is a natural and probable consequence, which in light of the circumstances, should have been foreseen or anticipated." *Id*. at 1055 (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind. 2000)). At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct. *Id*.

[13] Here, the evidence most favorable to the Fullers was that Greg saw the metal on the crane's boom hit Linda's arm, and she fell. Merritt testified that a bumper he was dragging on the crane's magnet hit Linda. He then exited the crane to see if she was okay. Finally, both Merritt and McIntire acknowledged that the magnet on the boom of the crane should have been set down until the Fullers cleared the area.

[14] Nevertheless, OmniSource argues that it is unreasonable to infer from the above-mentioned evidence that any act on its part caused Linda to fall. OmniSource relies on the facts in our decision in *Hayden v. Paragon Steakhouse*,

731 N.E.2d 456 (Ind. Ct. App. 2000) to essentially argue that Greg's testimony was speculation as to what had occurred instead of evidence to be weighed by the jury. However, we distinguish the facts in *Hayden* from those before us now.

[15] In *Hayden*, we recognized that an inference is not reasonable when it rests on no more than speculation or conjecture, and we affirmed the trial court's grant of summary judgment because the designated evidence "clearly revealed that [the plaintiff] did not know what caused his fall." *Hayden*, 731 N.E.2d at 458. Although the plaintiff's complaint alleged that he fell on snow and ice, the plaintiff testified in his deposition that he did not see any snow where he fell and did not know whether there was ice in the area. *Id*. Plaintiff also testified to his "belief" that he slipped on ice and that he suspected he slipped on something. *Id*. There were no witnesses to the plaintiff's fall, and he stated that he did not recall the pavement being slippery prior to his fall. We reasoned that "without any evidence on how or why [the plaintiff] fell, the [plaintiff] was relying on speculation and conjecture to explain the proximate cause of his injuries." *Id*. at 458-59.

[16] Here, Greg testified that metal connected to the crane's boom struck Linda. OmniSource argues that Greg's "testimony and vantage point make clear that he was not in a position to see whether any contact with the crane or any portion thereof is what caused [Linda] to fall." (OmniSource's Br. 19). However, considering the evidence most favorable to the Fullers, when OmniSource's attorney directly confronted Greg with this point on cross-

examination, he again stated that he saw metal come into contact with his wife. (Tr. 193). Greg was adamant that his wife fell after being struck by the metal; there was no reservation in his testimony. We find that any dispute about Greg's testimony is a question of weighing credibility, which is a matter reserved for the fact-finder and not appropriate for judgment on the evidence. *Hartford Steam Boiler Inspection and Ins. Co. v. White*, 775 N.E.2d 1128, 1143 (Ind. Ct. App. 2002), *trans. denied*.

[17] Moreover, even if we were to treat Greg's testimony as we treated the evidence in *Hayden*, there was other evidence presented, namely the testimony of Merritt and McIntire, that allowed for the reasonable inference that Linda would have never been struck by metal on the crane's boom but for Merritt operating the crane in the area of the Fullers. *See Bartolini*, 799 N.E.2d at 1055. Thus, the evidence met the minimum for showing proximate cause. *See, e.g.*, *id*.

[18] The trial court properly recognized that reasonable jurors could come to different conclusions regarding the evidence. Indeed, the jury apportioned some fault to the Fullers and found for OmniSource on Greg's claims. Accordingly, the trial court did not err in denying OmniSource's motion for judgment on the evidence.

[19] Affirmed.

Crone, J., and Brown, J., concur.